## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

WAYNE GLASGOW,                          )
                                        )
                          Plaintiff,    )      **CIVIL NO. 2009/019**
              v.                        )
                                        )
VEOLIA WATER NORTH AMERICA,             )
OPERATING SERVICES LLC,                 )
                                        )
                          Defendant.    )
_____  )


## MEMORANDUM OPINION AND ORDER

Finch, Senior Judge

THIS MATTER is before the Court on Defendant VWNA Process Solutions/Texas LLC's[1] ("Defendant" or "VWNA") Motion to Dismiss Plaintiffs' First Amended Complaint. Defendant's Motion is brought under Federal Rule of Procedure 12(b)(6) and contends that Plaintiff has failed to state a claim for employment discrimination, intentional infliction of emotional distress, breach of the duty of good faith and fair dealing and wrongful discharge. For the reasons discussed below, the Court grants in part and denies in part Defendant's Motion.

### I.        Procedural and Factual Background

Plaintiff Wayne Glasgow's ("Plaintiff" or "Glasgow") filed suit against VWNA in this Court on April 29, 2009.  Plaintiff filed a First Amended Complaint ("FAC") on June 8, 2009. The FAC alleges the following pertinent facts:  Glasgow is a citizen of the U.S. Virgin Islands. (FAC ¶ 2.)  He began working for Tetra Processing Services, Inc., as an Operator in 2001 and

---

[1] In his complaint, Plaintiff Glasgow erroneously named Veolia Water North America Operating Services, LLC as the defendant in this matter.  Both parties acknowledge that VWNA Process Solutions/Texas LLC is the proper party.

was promoted to Supervisor in 2003. (*Id.* ¶¶ 4-5.)  In 2007, Tetra was sold to Veolia Water North America Operating Systems, LLC ("Veolia"), an Illinois Corporation doing business in the U.S. Virgin Islands. (*Id.* ¶¶ 3, 7.)   Glasgow kept his Supervisor position when Tetra was sold to Veolia and his seniority and benefits were transferred to Veolia.  (*Id.* ¶ 7.)

Glasgow alleges after Veolia took over, "it began to unilaterally change the policies and procedures."  (*Id.* ¶ 8.)  For instance, he states that he and other black West Indian males were passed over for several promotions within the company because Veolia repeatedly hired white statesiders for supervisory positions without publicly posting the positions first.  (*Id.* ¶¶ 9, 13, 23, 30, 31.)  Veolia also frequently required Glasgow and other black West Indian workers to work the night shifts, while allowing the white stateside workers to work the day shifts.  (*Id.* ¶¶ 10, 11, 14, 15, 25.)  Glasgow alleges that Veolia had a practice of subjecting the black West Indian workers to "more frequent and more severe discipline," and that his supervisor, Jason Bufton, undermined and disregarded the black supervisors as part of this practice.  (*Id.* ¶¶ 18-19.)  He further alleges that after complaining about Bufton's behavior, Veolia, through Bufton, "conspired to terminate him." (*Id.* ¶ 19.)

In February of 2008, Defendant "unfairly" demoted Plaintiff from his position as Supervisor for failing to report an accident even though there was no one to report it to at the time the accident occurred.  As a result of this accident, Glasgow was suspended for a week without pay. (*Id*. ¶¶ 20-21.)  Although he continued to perform the work of a supervisor during the night shift, he did not receive supervisor pay.  (*Id.* ¶¶ 25-27.)  On March 11, 2009, Glasgow reported for work on the night shift and found a note informing him that his crew needed to paint a tank so that it could be placed in an upright position the next day.  The tank had been placed on rollers, and Glasgow was instructed to paint the bottom of the tank.  There was no supervisor on

duty for the shift.  (*Id.* ¶ 33.)  Glasgow and Phillip Ryan, another black West Indian employee, painted the bottom of the tank, inspected it, and cleaned the work area.  (*Id.* ¶¶ 34-36.)  The following day, Bufton called Glasgow and accused him of damaging the tank and failing to report it.  (*Id.* ¶ 37.)  Bufton informed Glasgow that he was suspended without pay until further notice.  (*Id.* ¶ 38.)  Glasgow then called Chris Kater, then head of the company in Texas, to complain that locals were being treated unfairly; Kater responded that he would investigate the complaint and follow up with Glasgow.  (*Id.* ¶ 39.)  On March 13, 2009, Bufton asked Glasgow to report work where he was then terminated.  (*Id.* ¶ 40.)  Upon his termination, Glasgow filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Department of Labor.  (*Id.* ¶ 46.)

In the FAC, Plaintiff brings six causes of action: (1) discrimination in violation of Title VII (Count I); (2) discrimination in violation of the Virgin Islands Civil Rights Act ("VICRA") (Count II); (3) intentional infliction of emotional distress and negligent infliction of emotional distress (Count III); (4) violations of the duty of good faith and fair dealing and "public policy" (Count V);[2] (5) wrongful discharge in violation of the Virgin Islands' Wrongful Discharge Act (WDA) (Count VI); and (6) a claim for punitive damages (Count VII).  (FAC ¶¶ 48-66.) Defendant's Motion challenges Counts I, II, III, and VI.

## II.    Standard of Review

A motion to dismiss under Fed. R. Civ. 12(b)(6) challenges whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)).    To survive a Rule 12(b)(6) motion to dismiss, a plaintiff need not provide

---

[2] Plaintiff inexplicably omits Count IV from his FAC.  (*See* FAC ¶¶ 57-58.)

detailed factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, a plaintiff cannot rely on mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Id.* (citations omitted). Rather, a plaintiff must cite enough facts to state a claim to relief that is plausible on its face. *Id*. at 570. To establish facial plausibility, the plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." *Id*. at 1950 (internal quotations and citation omitted).

When determining a motion to dismiss, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the nonmoving party. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *McTernan v. City of York, Penn*., 577 F.3d 521, 531 (3d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

Additionally, a "district court [] ruling on a motion to dismiss . . . [is] not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997). "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *Burlington Coat Factory*, 114 F.3d at 1426). In opposition to the Motion to Dismiss, Plaintiff includes several documents including an affidavit from Mr. Glasgow, copies of what are purported to be a complaint filed with the Virgin Islands Department of Labor and the EEOC,

4

and a transcript of a deposition of Lunsford Williams, an employee of the Department of Labor, dated August 27, 2004 apparently taken in an unrelated case. Similarly, Defendant includes letters that it purportedly received from Virgin Islands Civil Rights Commission regarding Plaintiff's complaint. None of these documents are "integral to or explicitly relied upon in the complaint" and the Court declines to consider them.[3]  *Burlington Coat Factory*, 114 F.3d at 1426; *see also  Christaldi-Smith v. JDJ, Inc.*, 367 F.Supp.2d 756, 762 (E.D. Pa. 2005) (refusing to consider employer's affidavit and documents in support of its position that it did not meet Title VII's numerosity requirement on a motion to dismiss).

### III.    Discussion

#### A.  Count I – Title VII Claim

##### i.    Failure to Plead Receipt of a Right-to-Sue Letter

Title VII establishes an administrative framework that a plaintiff must comply with prior to filing to suit. In a nutshell, a person is required to file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the occurrence of the alleged unlawful employment practice, if the party also initiates a complaint with a parallel state agency.[4]  *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001). The EEOC must then investigate the charge and the party "must allow a minimum of 180 days

---

[3] The letters to the EEOC and Department of Labor (Plaintiff's Exhibits 3 and 4) cannot be said to be "integral" to the FAC. As discussed below, receipt of a right-to-sue letter from the EEOC is an element of a Title VII claim. Plaintiff's complaint to the EEOC, while perhaps relevant to administrative exhaustion, does not satisfy the receipt of the right-to-sue letter requirement and is therefore not "integral" to the claims made in the complaint.

[4] A party only has 180 days if they have not filed a complaint with a parallel state agency. *Burgh*, 251 F.3d at 469.  Plaintiff pleaded that he filed a complaint regarding his termination with the "Department of Labor." (FAC ¶ 46.)  The Virgin Islands Department of Labor is the local governmental body responsible for investigating complaints of employment discrimination. *See* 24 V.I.C. §§ 451-454.  Accordingly, he has 300 days from the date of the occurrence to file a complaint with the EEOC.

for the EEOC investigation to proceed." *Id.* (citing 42 U.S.C. § 2000e-5(f)(1)).[5]  "If, after 180

days, the EEOC has not resolved the charge, it must notify the complainant, generally through

the issuance of a 'right-to-sue' letter, in which the EEOC states that it sees no reason to take

action on the complaint." *Id.* (citations omitted).  "The receipt of the right-to-sue letter indicates

that a complainant has exhausted administrative remedies, an essential element for bringing a

claim in court under Title VII . . . A complainant may not bring a Title VII suit without having

first received a right-to-sue letter. " *Id.* (citing *Anjelino v. New York Times Co.*, 200 F.3d 73, 87-

93 (3d Cir. 1999)).

        At issue here is Plaintiff's alleged failure to plead that he received a right-to-sue letter

from the EEOC.  Defendant argues that Glasgow's Title VII claim must be dismissed because he

failed to plead that he had received a right-to-sue letter from the EEOC.  Plaintiff responds that

allegation of a right-to-sue letter is not a jurisdictional requirement and that under the rule

announced in *Pinkard v. Pullman-Standard*, 678 F.2d 1211 (5th Cir. 1982), he is allowed to file

a Title VII action in district court before receiving the right-to-sue letter as long as the letter is

received during the pendency of the district court action.

        The receipt of a right-to-sue letter "is not a jurisdictional prerequisite to suit in federal

court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and

equitable tolling."  *Zipes v. Trans World Airways, Inc.*, 455 U.S. 385, 393 (1982); *see also*

*Gooding v. Warner-Lambert Co.*, 744 F.2d 354, 358 (3d Cir. 1984) (right-to-sue letter "is not a

'jurisdictional' requirement in the constitutional sense, but rather a statutory requirement

---

[5] "If a charge filed with the Commission… is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge…, the Commission has not filed a civil action under this section…, the Commission… shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge [] by the person claiming to be aggrieved…." 42 U.S.C. § 2000e-5(f)(1).

designed to give the administrative process an opportunity to proceed before a lawsuit is filed.") Accordingly, in certain limited circumstances, a plaintiff's Title VII claim may proceed in district court absent an allegation of a right-to-sue letter. *See, e.g., Anjelino,* 200 F.3d at 96 (reversing district court's decision to dismiss plaintiffs' retaliation claims for failure to exhaust administrative remedies where plaintiffs did not receive right-to-sue letters for their retaliation claims, but had received a right-to-sue letter for their original discrimination claim); *Gooding,* 744 F.2d at 358-59 (reversing district court's decision to dismiss plaintiff's Title VII retaliation claim for failure to allege receipt of a right-to-sue letter, because letter had been received during the lawsuit and plaintiff had already provided right-to-sue letter for original discrimination claim); *Williams v. Virgin Islands Tel. Corp.*, 2009 U.S. Dist. LEXIS 47683, at *6-8 (D.V.I. June 5, 2009) (denying motion to dismiss where plaintiff failed to allege receipt of a right-to-sue letter, but attached the letter to his opposition to motion to dismiss); *Burke-Ventura v. Virgin Islands Tel. Corp.*, 2009 U.S. Dist. LEXIS 47752, at *7-9 (D.V.I. June 5, 2009) (same).

Here, the only reference Glasgow makes to the EEOC is his allegation that he "filed a Complaint with the EEOC and the Department of Labor." (FAC ¶ 46.) However, unlike the plaintiffs in *Williams* and *Burke-Ventura*, Glasgow has not provided the Court with a right-to-sue letter from the EEOC. In fact, Glasgow admits in his opposition brief that he does not have a right-to-sue letter, stating that he "expects to receive the EEOC Right to Sue Letter shortly and certainly during the pendency of this litigation." (Pl.'s Opp. at 9, Doc. 8.) Plaintiff's failure to plead that he received a right-to-sue letter is not excused by the principles in any of the above discussed cases.

Finally, the *Pinkard* rule is inapplicable in this situation. In *Pinkard*, the plaintiffs filed their discrimination lawsuit only four days after filing a complaint with the EEOC, but received

the right-to-sue letter four months before trial began. *Pinkard*, 678 F.2d at 1215. Nonetheless, seven months after trial, the district court dismissed their claims for lack of subject matter jurisdiction because plaintiffs had failed to obtain right-to-sue letters prior to filing suit. *Id.* In reversing the district court, the Fifth Circuit held that the receipt of a right-to-sue letter was not a jurisdictional prerequisite to filing suit but a "condition precedent subject to equitable modification" and that "receipt of the letters by appellants prior to dismissal of their Title VII claims cured their failure to initially satisfy the condition precedent." *Id.* at 1215. However, the court noted that "[w]e do not in any way approve the filing of suit prior to the receipt of a right-to-sue letter. As we have noted a prematurely filed suit is subject to dismissal upon proper motion at any time prior to the receipt of statutory notice of the right to sue." *Id.* at 1219 n. 6. Here, as was not the case in *Pinkard*, Defendant has brought a motion to dismiss prior to Plaintiff's receipt of a right-to-sue letter. Accordingly, the *Pinkard* rule is of no avail to Plaintiff and his Title VII claim is dismissed without prejudice. Glasgow has thirty days to amend his complaint to allege receipt of the right-to-sue letter from the EEOC. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").

### ii. Statute of Limitations

Defendant also seeks dismissal of Plaintiff's Title VII claim on the grounds that it may not be based on conduct that occurred more than 300 days before the filing of Plaintiff's complaint with the EEOC. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice . . . A claim is time

barred if it is not filed within these time limits.")  Plaintiff has not alleged the date that he filed a claim with the EEOC (*see* FAC ¶ 46), but in his opposition, Plaintiff claims that he filed a claim with the EEOC on April 16, 2009.  (Pl.'s Opp. at 2.)  Seizing on this date, Defendant contends that any conduct that occurred prior to June 21, 2008 (300 days before April 16, 2009) may not be included in Plaintiff's Title VII cause of action.  Plaintiff responds that Defendant's discriminatory conduct constitutes a continuing violation and that the last act occurred in March 2009, which is within statutory period.

Under the continuing violation theory a "plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant."  *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995) (citing *Bronze Shields, Inc. v. New Jersey Dept. of Civ. Serv.*, 667 F.2d 1074, 1081 (3d Cir. 1981), *cert. denied*, 458 U.S. 1122 (1982); *Jewett v. International Tel. and Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981), *cert. denied*, 454 U.S. 969 (1981)).  If the conduct in question is a "discrete" act, however, the continuing violation doctrine does not apply and a party must file a charge within the statutory period.  *Morgan*, 536 U.S. at 110.  "Discrete acts" includes "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation."  *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).  At the same time, conduct that occurred outside the limitations period may be actionable under the continuing violation doctrine if it is part of hostile work environment claim.  *Morgan,* 536 U.S. at 117-18.  This essentially turns application of the continuing violation doctrine into the question of whether Plaintiff has alleged a "hostile work environment" claim or a series of "discrete discriminatory acts."  *Id.* at 113; *see also O'Connor,* 440 F.3d at 127 (noting that continuing violation argument "hinges on

[plaintiff's] hostile workplace environment theory").

To state a hostile work environment claim, a plaintiff must allege (and ultimately prove) that: "(1) he suffered intentional discrimination because of his race; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (internal brackets and citations omitted). When evaluating hostile work environment claims, "courts in this jurisdiction must look to the totality of the circumstances." *Warner v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 44502, at *27 (D.V.I. May 27, 2009) (citations omitted); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("Whether an environment is 'hostile' . . . can be determined only by looking at all the circumstances."). While racist comments and threats frequently form the basis of a hostile work environment claim, facially neutral mistreatment that is motivated by race may also support a hostile work environment claim. *Caver*, 420 F.3d at 264 (finding that memos written by commanding officers requesting that black police officer receive psychiatric evaluation could form the basis of a hostile work environment claim if they were intentionally false); *Cardenas v. Massey*, 269 F.3d 251, 261 (3d Cir. 2001) ("Title VII applies to both facially neutral mistreatment and overt ethnic discrimination which in sum constitute the hostile work environment.") (internal quotation and citations omitted).

While Plaintiff did not use the phrase "hostile work environment" in the FAC, his allegations nonetheless sufficiently state a hostile work environment claim. First, Plaintiff has alleged that he was intentionally discriminated against by Bufton, his "project director," who had a "clear dislike for the local black West Indian work force." (FAC ¶ 6.) Bufton "began a pattern of discrimination against the black West Indian workers." (*Id.*; *see also id.* at ¶¶ 15, 18, 20.)

The discrimination was pervasive and regular affecting the posting of open positions (*id.* ¶¶9, 13, 23, 30-31), assigning of shifts (*id.* ¶¶ 10-11, 14-15, 25, 27), offering of training (*id.* ¶¶ 12, 29), repairing of broken equipment (*id.* ¶ 17), discipline (*id.* ¶¶ 18, 20-22, 40), and compensation (*id.* ¶¶ 24-27, 32).[6] Plaintiff was detrimentally affected by the pattern of discrimination in that he lost income and suffered "physical illness." (*Id.* ¶ 47.) It is reasonable to infer from Plaintiff's allegations that a reasonable person in his protected class (black West Indian) would also have been similarly affected by the alleged pattern of discrimination.[7] Finally, as Bufton is Plaintiff's supervisor and/or manager, Defendant may be held vicariously liable under Title VII for his discriminatory actions. *See Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100,

---

[6] The Court recognizes that some of this conduct might be said to be "discrete acts." *See O'Connor,* 440 F.3d at 127 ("*Morgan* provides fairly precise guidance as to what sorts of acts are 'discrete' . . . [including] termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation."); *see also Mikula v. Allegheny County Of Penn.,* 583 F.3d 181, 186 (3d Cir. 2009) ("As determined by *Morgan,* the [continuing violation] doctrine does not apply to discrete, completed employment actions."); *Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 483-84 (3d Cir. 1997) ("[Plaintiff]'s failure to promote and train claim addresses discrete instances of alleged discrimination that are not susceptible to a continuing violation analysis."). On the other hand, many of these acts do not appear to be discrete "employment actions" and Plaintiff pleaded that these acts occurred repeatedly as part of a "pattern of discrimination." *See Caver,* 420 F.3d at 263-64 (noting that racially motivated facially neutral conduct may form basis of hostile work environment). The Court does not rule out the possibility that some of these acts are, in fact, "discrete," but leaves that question to a fuller evidentiary record. *See McCliment v. Easton Area Sch.*, Dist., 2007 U.S. Dist. LEXIS 58882, at *9 (E.D. Pa. 2007) ("Because it is impossible to determine whether the subject discriminatory actions were discrete instances of alleged discrimination that are not susceptible to a continuing violation analysis, Defendant's motion must be denied as to this issue."); *see also Rush,* 113 F.3d at 482-85 (finding that certain conduct occurring outside of statute of limitations was "discrete" and therefore non-actionable but apply continuing violation theory to conduct forming basis of hostile work environment claim). Accordingly, the Court's ruling on this issue is without prejudice to Defendant challenging Plaintiff's continuing violation theory at a later stage in the proceedings.

[7] Defendant moves to dismiss Plaintiff's complaint on the grounds that he failed to allege that he is a member of a protected class. However, Plaintiff alleges that Bufton "had a clear dislike for the local black West Indian work force and Plaintiff in particular." (FAC ¶ 6.) While not the clearest allegation, Plaintiff includes himself in the class of people that Bufton allegedly disliked and it is reasonable to infer from this that Plaintiff is a black West Indian.

104 (3d Cir. 2009) ("The basis of an employer's liability for hostile environment [racial] harassment depends on whether the harasser is the victim's supervisor or merely a coworker."); *Andreoli v. Gates,* 482 F.3d 641, 648 (3d Cir. 2007) ("If supervisors create the hostile environment, the employer is strictly liable, though an affirmative defense may be available where there is no tangible employment action." (quoting *Jensen v. Potter*, 435 F.3d 444, 452-53 (3d Cir. 2006))). Construing the FAC in favor of Plaintiff, as required at this stage, the Court finds that Plaintiff has adequately alleged a hostile work environment.

The analysis does not end there, however. In order to fall within the continuing violations theory, a plaintiff's allegations must show: 1) that at least one discriminatory act occurred within the filing period, and 2) that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." *West,* 45 F.3d at 755. Here, Plaintiff has alleged several discriminatory acts within the filing period including his working as supervisor without being paid as a supervisor, Defendant's failure to allow Plaintiff to apply for the job of "Safety Man," the docking of his pay for conduct that white employees were allowed to do, and, arguably, his termination.[8] (FAC ¶¶ 26-27, 30-33, 40.) Plaintiff has alleged that these events were not sporadic events but part of a "pattern of discrimination." (*Id.* ¶¶ 6, 15, 18, 20.) Accordingly, these allegations are sufficient to invoke the continuing violation theory. *See West,* 45 F.3d at 755 ("Once the plaintiff has alleged sufficient facts to support use of the continuing violation theory, however, the 300-day filing period becomes irrelevant-as long as at least one violation has occurred within that 300 days."); *Bahar v. Northwestern Human Servs.*, 2007 U.S. Dist. LEXIS 6372, at *11 (E.D. Pa. 2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)) (finding that two specific allegations of discrimination supported continuing

---

[8] As discussed more fully below in Section III(D), Plaintiff did not actually allege that his termination was racially motivated.

violation theory at motion to dismiss because "at this stage [plaintiff] is not required to plead with particularity all facts which support his claim."); *McCliment*, 2007 U.S. Dist. LEXIS 58882, at *9 (denying motion to dismiss on statute of limitations grounds "[b]ecause it is impossible to determine whether the subject discriminatory actions were discrete instances of alleged discrimination that are not susceptible to a continuing violation analysis.").

### B. Count II – Virgin Islands Civil Rights Act Claims

Plaintiff's second cause of action alleges that Defendant's actions are "in violation of the Civil Rights Acts of the US Virgin Islands as set out in Title 24 and 10 of the Virgin Islands Code." (FAC ¶ 52.) Defendant moves to dismiss this claim on the basis that Plaintiff has not alleged the specific sections of these titles that have been violated and, in any event, there is no private cause of action under these titles. Plaintiff acknowledges that section 64 of Title 10 of the Virgin Island Code, which prohibits employment discrimination, does not provide a private cause of action,[9] but argues that 10 V.I.C. § 7, which also prohibits employment discrimination, does provide a private cause of action.[10]

---

[9] Section 64 of Title 10 of the Virgin Islands Code prohibits unlawful discriminatory practices, many of which mirror the prohibitions contained in 10 V.I.C. § 3. However, section 64 does not authorize a private cause of action. *See Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 178-79 (3d Cir. 1999); *Warner v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 44502, at *40 (D.V.I. 2009); *Miller v. V.I. Hous. Auth.*, 2005 U.S. Dist. LEXIS 11146, at *14-16 (D.V.I. 2005).

[10] Plaintiff does not advance an argument regarding Title 24. Courts in the Virgin Islands have generally held that Title 24 does not provide a private cause of action for employment discrimination. *See Miller,* 2005 U.S. Dist. LEXIS 11146, at *14-16 overruling *Ramos v. St. Croix Alumina, L.L.C.*, 277 F. Supp. 2d 600 (D.V.I. 2003); *Haase v. Gov't of the V.I.*, 2009 U.S. Dist. LEXIS 107445, at *18-19 (D.V.I. Nov. 17, 2009) (no private cause of action for employment discrimination under Title 24). Section 451a of Title 24 provides a private cause of action to an employee who is retaliated against for reporting (or "about to report") a claim of employment discrimination "to a public body." 24 V.I.C. § 451a. Even if Plaintiff's allegations that he "repeatedly complained" about the discriminatory conduct can be construed as a retaliation claim (*see, e.g.,* FAC ¶ 19), Plaintiff does not allege that he reported the alleged discrimination to a "public body" until after he was fired. (*id.* at ¶ 46.) Therefore, he has not stated a cause of action under section 451a.

The Court begins with the text of the relevant statutes. Section 3(b) of Title 10 provides in pertinent part that:

> No person, being the owner, proprietor, superintendent, manager, agent, or employee of any publicly licensed business or any other business or industrial establishment, shall directly, indirectly or by subterfuge, deny employment in or at such business to any applicant therefor, *or engage in or permit any discrimination or differential in pay or working conditions for workers doing the same work, on account of race, creed, color, or national origin*, subject only to the conditions and limitations established by law and applicable in like manner to all persons.

10 V.I.C. § 3(b) (emphasis added.)

> Section 7 of Title 10 of the Virgin Islands Code provides as follows:
>
> Penalties for violations:
>
> Whoever, whether as *owner, officer, manager, agent, or employee* of any *business or industrial establishment*, labor organization, place of public accommodation, resort or amusement, or club, violates any of the provisions of this chapter, shall, for each and every such violation, be --
>
> (1) *liable in actual damages*, and in addition, thereto, to punitive damages not to exceed $5,000 to be recovered *in a civil action by the person aggrieved* thereby or by any resident of the United States Virgin Islands to whom the person aggrieved may assign his cause of action; and
>
> (2) fined not more than $2,000 or imprisoned not more than one year, or both. The owner or owners of any business where an offense mentioned herein has been *committed by his or its officer, manager, agent, or employee*, such owner or owners shall be *severally and/or jointly liable with the offender* for the actual and punitive damages provided for herein.

10 V.I.C. § 7 (emphasis added). Together, 10 V.I.C. §§ 3 & 7 provide a private cause of action against an employer or business who "engage[s] in or permit[s] any discrimination or differential in pay or working conditions for workers doing the same work, on account of race, creed, color, or national origin." *See Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 178-79 (3d Cir. 1999) (holding that 10 V.I.C. § 7 provides a private cause of action for discrimination "with respect to employment and working conditions.").

Plaintiff alleges that Defendant "began a pattern of discrimination against the black West

Indian workers" (FAC ¶ 6) including by not allowing them to apply for jobs, refusing to promote them, giving them fewer training opportunities, less desirable work shifts, and more frequent and severe discipline than their white counterparts. (FAC ¶¶ 6, 9, 13, 14, 15, 17, 18, 23, 29, 32.) Plaintiff also makes several allegations regarding specific instances of discrimination he experienced at VWNA, including that he was unfairly demoted, required to do work without receiving proper pay, and ultimately terminated for discriminatory reasons. (*Id.* at ¶¶ 10, 11, 19, 20, 22, 24, 25, 27, 33-45.) These allegations sufficiently state a cause of action for discrimination in violation of 10 V.I.C. § 3(b). Accordingly, Defendant's motion to dismiss Plaintiff's VICRA claim under Title 10 is denied.[11]

### C. Count III – Intentional Infliction of Emotional Distress

Defendant seeks dismissal of Plaintiff's intentional infliction of emotional distress (IIED) claim on the grounds that 1) Glasgow cannot assert a claim of intentional infliction of emotional distress against a corporation for actions taken by its supervisors and 2) that Glasgow has failed to allege any conduct outrageous enough to satisfy a claim of intentional infliction of emotional distress.

IIED occurs when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Eddy v. Virgin Islands Water and Power Authority*, 369 F.3d 227, 231 (3d Cir. 2004) (citing Restatement (Second) of Torts § 46). In

---

[11] While Plaintiff did not cite a specific statutory provision underlying his VICRA claim, pleading rules "do not require that a complaint include the particular statutory provisions underlying each count" but need only "provide sufficient notice of the grounds upon which the claim is based." *Miller v. V.I. Hous. Auth.*, 46 V.I. 623, 625 (D.V.I. 2005) (Finch, J.) (citing Fed. R. Civ. Proc. 8 and *United States v. Jones*, 916 F. Supp. 383, 385 (D.N.J. 1995)). The FAC provides adequate notice that Plaintiff is alleging employment discrimination in violation of VICRA. *See Berrios v. Hovic*, 2010 WL 3069480, at *3 (D.V.I. July 29, 2010) (rejecting identical argument that claim brought under "Titles 10 and 24 of the Virgin Islands Code" was deficient because it failed to identify specific code provisions).

order to be liable for IIED, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  Restatement (Second) of Torts § 46 cmt. d;[12] *see also Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988) (same)*; Claytor v. Chenay Bay Beach Resort,* 79 F.Supp.2d 577, 583 (D.V.I. 2000) (same). This is a high bar to meet and "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."  *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997) (internal quotation and citation omitted).

Citing *Warner v. Kmart*, U.S. Dist. LEXIS 44502, Plaintiff argues that he has "set forth sufficient facts of ongoing, pervasive and demoralizing discrimination by the Defendant for the Court to draw a reasonable inference that the Defendant is liable for inflicting emotional distress upon Plaintiff."  (Pl.'s Opp. at 21.)  However, in *Warner* and other employment discrimination cases, the conduct held to be sufficiently outrageous to support an IIED claim involved overt discriminatory hostility and malice toward the plaintiff. *See, e.g., Warner*, 2009 U.S. Dist. LEXIS 44502 at *44-50 (evidence that plaintiff's supervisor threatened her employment and retaliated against her after she refused his overt sexual advances and reported him to management were sufficiently outrageous behavior to support IIED claim); *McClease v. R.R. Donnelley & Sons Co*., 226 F. Supp. 2d 695, 698 n.8, 703 (E.D. Pa. 2002) (allegations that manager used racial epithets toward defendant and dismissed other black workers on the basis of

---

[12] In the absence of locals law to the contrary, courts applying Virgin Islands law are instructed to follow the Restatement.  *See* 1 V.I.C. § 4 ("The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute… shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.").

race before finally terminating plaintiff sufficiently stated claim for IIED); *Codrington v. V.I. Port Auth*., 911 F. Supp. 907, 918 (D.V.I. 1996) (evidence that supervisor "repeatedly subjected [plaintiff] to unwanted touching, kissing and sexual propositions [and] that he attempted to rape her on one occasion" sufficient to survive motion for summary judgment on IIED claim); *Bishop v. Okidata, Inc.*, 864 F. Supp. 416, 428 (D.N.J. 1994) (noting that court was "skeptical of [plaintiff's] ability to meet the extremely high standard for an employment-related intentional infliction of emotional distress claim" but denying motion to dismiss IIED claim where plaintiff alleged "a continuing pattern of harassment" including that defendants made false accusations against her, threatened her with discharge, "made negative comments regarding her cancer at performance evaluations," forced her return to work two weeks after her surgery, and refused to allow her leave for needed radiation and chemotherapy treatments); *Porta v. Rollins Environmental Services (NJ), Inc*., 654 F.Supp. 1275, 1285 (D.N.J. 1987) (evidence that plaintiff received threatening and sexually offensive notes from coworkers and repeated derogatory sexual comments from supervisor, complained to management who in turn did not address issue of sexual harassment and was finally terminated for pretextual reasons sufficient to support claim of IIED at summary judgment).

Here, Plaintiff's allegations do not rise to the level of intentional malicious conduct present in *Warner*, *McClease, Codrington*, *Porta,* or *Bishop*.   For example, in *Warner*, the plaintiff was threatened with termination when she refused her supervisor's overt sexual advances and was further harassed after she reported this conduct to Kmart's management. *Warner*, 2009 U.S. Dist. LEXIS 44502 at *49-50.  And in *Bishop*, which this Court views as the outer limit of the sorts of allegations that can support an IIED claim, the plaintiff alleged that defendant verbally abused her regarding her disability (cancer) at performance evaluations and

refused to let her leave work for chemotherapy treatments. *Bishop*, 864 F.Supp. at 419. Even reading the allegations in the light most favorable to Plaintiff, they do not suggest outrageous and overt racial harassment.[13] As such, the Court dismisses Plaintiff's IIED claim without prejudice. Plaintiff shall have thirty days to amend his complaint to properly plead an IIED cause of action, if he so desires.[14]

### D. Count VI - Wrongful Discharge

In order to state a claim under the Virgin Islands Wrongful Discharge Act ("WDA"), 24 V.I.C. § 76, a plaintiff must allege that: (1) he was an employee; (2) of a covered employer; (3) he was discharged; (4) and the discharge was wrongful. *Rajbahadoorsingh v. Chase Manhattan Bank*, 168 F.Supp.2d 496, 504-05 (D.V.I. 2001). The WDA enumerates nine grounds under which an employer's discharge of an employee will not be considered wrongful. 24 V.I.C. § 76.[15] An employee who is discharged for a reason other than one of the nine listed under the Act

---

[13] This is not to suggest that any form of racial discrimination is acceptable in the workplace, only that Plaintiff's remedy for the racial discrimination that he alleges does not include an IIED claim.

[14] In Count III, Plaintiff alternatively alleges a claim for negligent infliction of emotional distress ("NIED"). (FAC ¶ 56.) "Two elements are required to sustain a claim of negligent infliction of emotional distress. First, the negligent conduct must have placed the plaintiff in danger of his or her own safety. Second, the plaintiff must have suffered some physical harm as a result of the emotional distress." *Fenton v. C&C Constr. & Maint., Inc.,* 48 V.I. 263, 276 (V.I. 2007). Because Plaintiff has not pleaded facts suggesting that Defendant's negligent conduct put him danger of his own safety, his NIED claim is dismissed without prejudice.

[15] Under the WDA, anemployer may dismiss any employee:
> "(1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;
> (2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;
> (3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;
> (4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

"shall be considered to have been wrongfully discharged." 24 V.I.C. § 76(c). "This provision establishes a presumption that an employee has been wrongfully discharged if discharged for any reason other than those listed in Section 76(a)." *Gonzalez v. AMR*, 549 F.3d 219, 222 (3d Cir. 2008).

Defendant seeks dismissal of Plaintiff's Wrongful Discharge Act ("WDA") claim on the basis that the FAC fails to allege that VWNA is a covered employer or that the discharge was wrongful. Plaintiff argues that the FAC "alleges that . . . Defendant unfairly terminated him as part of a pattern and practice of discrimination." (Pl.'s Opp. at 16.) However, the FAC does not allege that Plaintiff's termination was racially motivated or part of the alleged pattern of discrimination; Plaintiff alleges that he was terminated after Bufton accused him of failing to report an incident wherein Plaintiff and another employee allegedly damaged a tank while painting it. (FAC ¶¶ 33-38.) While Plaintiff alleges that "he had no knowledge the tank was damaged," he does not state that the tank was undamaged or that Bufton's justification was pretextual or racially motivated. (FAC ¶ 37.) His allegation of wrongful discharge lacks the requisite facts to nudge it over the "plausibility" line and invoke section 76's presumption of wrongfulness. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[A] plaintiff must 'nudge [his or her] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).

---

(5) who performs his work assignments in a negligent manner;
(6) whose continuous absences from his place of employment affect the interests of his employer;
(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;
(8) who is dishonest; or
(9) whose conduct is such that it leads to the refusal, reluctance or inability of other employees to work with him."

24 V.I.C. § 76(a).

Furthermore for the WDA to be applicable, Defendant must be an "employer" which is someone "that has employed five (5) or more employees for each working day in each of the twenty (20) or more calendar weeks in the two (2) year period preceding a discharge." 24 V.I.C. § 62. While it is likely that Defendant fits the definition of an "employer" as used by the WDA, the Court cannot infer this from the FAC. However, as with his failure to plead receipt of a right-to-sue letter, these defects may be easily cured and Plaintiff's WDA claim is dismissed without prejudice. Plaintiff shall have thirty days to amend his complaint to properly plead a cause of action under the WDA.

## IV.   Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**;

Plaintiff's Title VII cause of action (Count I) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have thirty days to amend his complaint to allege receipt of a right-to-sue letter from the EEOC;

Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress (Count III) are **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have thirty days to amend his complaint to properly state a claim for intentional infliction of emotional distress and negligent infliction of emotional distress;

Plaintiff's cause of action under the Virgin Islands Wrongful Discharge Act (Count VI) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall have thirty days to amend his complaint to properly plead a cause of action under the Wrongful Discharge Act.

Defendant's Motion to Dismiss is **DENIED** in all other respects.

**ENTERED:**


Dated: September 21, 2010          _____/s/_____
                                      RAYMOND L. FINCH
                                      SENIOR U.S. DISTRICT JUDGE